IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| LANE BOURQUE | § | |
| VS. | § | CIVIL ACTION NO. 1:08-CV-52 |
| DAREN CASSIDY, ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lane Bourque, a prisoner previously confined at the Jefferson County Correctional Facility, proceeding *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. § 1983 against Daren Cassidy, E. Miller, Bruce Minter, Craig Turner, Mark Frederick, Sammy Mills, Vertis Malveaux, Ortego, Albert, Rodney Noble, Amy Noble, Derwin Seals, Stegal, Mark Deshotel, Daniel Leday, and Richard Guiterriez.

Defendants have filed motions for summary judgment,[1] and plaintiff filed a response. The matter is now ripe for review.

### Factual Background

Plaintiff contends he was assigned to an isolation cell at the Jefferson County Correctional Facility in January 2006, after defendant Stegal filed a false disciplinary report against him. Plaintiff alleges the disciplinary case and cell assignment were retaliatory acts taken against him for assisting another prisoner with his legal work.

---

[1] Although defendants E. Miller, Ortego, Albert, Amy Noble, and Stegal have not been served and have not joined in the motion, the motion for summary judgment inures to the benefit of those defendants as well. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (allowing non-answering defendants to benefit from the summary judgment motion filed by appearing defendants).

Plaintiff contends he was moved to administrative segregation in March 2006. At that time, he began to assist more prisoners with their legal work. Plaintiff alleges he assisted three prisoners with a complaint that was filed in federal court on August 24, 2006. Plaintiff alleges defendant Woods was served with process in that case on October 3, 2006.

Plaintiff alleges defendant Stegal threatened him on October 22, 2006, in retaliation for plaintiff assisting the other inmates with their legal work. On October 30, 2006, plaintiff filed a grievance against defendant Stegal for threatening him. Plaintiff contends defendants Stegal and Noble retaliated against him by filing disciplinary cases.

On April 23, 2007, plaintiff alleges he wrote defendant Cassidy a letter concerning obstructions that were blocking the picket officer's view of prisoners in the housing area. On April 27, 2007, plaintiff told defendants Noble and Deshotel that he was having problems with a prisoner named Michael Chambers. Both defendants allegedly told plaintiff that they did not care, and that he could file a lawsuit.

On April 29, 2007, plaintiff alleges Michael Chambers assaulted him through the food slot of his cell door by using a broom handle with two pieces of metal taped to the end. Plaintiff alleges he suffered three puncture wounds on his hand and arm, and a bruise on his arm.

Fifteen minutes after the alleged assault, defendants Fredrick, Guiterriez, Stegal, and Ortego came to his cell. Defendant Guiterriez threatened to spray plaintiff with mace if he did not submit to restraints. Plaintiff alleges he saw a piece of metal from the weapon used to attack him, and he called it to the attention of defendant Ortego. Plaintiff alleges defendant Ortego and other officers denied plaintiff medical treatment for his injuries. He showed his injuries to a nurse the next morning, and she said she would report the incident.

2

On May 1, 2007, defendant Leday was escorted to an isolation hallway where defendants Miller, Turner, Mills, Seals and Rodney Noble were waiting. Defendants Seals and Noble strip searched plaintiff. Plaintiff alleges defendant Miller threatened to shock plaintiff with a tazer if he did not remove his clothes. Plaintiff was then restrained to a board. Plaintiff alleges defendant Miller made comments indicating that plaintiff was restrained in retaliation for helping other prisoners file a lawsuit.

Plaintiff contends he was restrained to a board at 2:00 p.m. on May 1, 2007. Plaintiff alleges that officers, who are not defendants to this lawsuit, declined his requests to use the restroom and for medication and food. Plaintiff complained to defendant Mintor at 11:45 p.m., but defendant Mintor did nothing to assist plaintiff. At 1:30 a.m. on May 2, 2007, plaintiff was transported, restrained on a hospital gurney, to the book-in area where he was placed in an empty cell. Plaintiff contends that defendant Mintor indicated that plaintiff was being retaliated against for assisting prisoners with their lawsuits. Plaintiff alleges he was forced to eat breakfast with one arm unrestrained while he was laying on his back. Plaintiff contends he remained restrained in this manner until 8:30 a.m. on May 2, 2007.

Defendants' Motions for Summary Judgment

Defendants contend that there is no evidence to support plaintiff's allegations of retaliation. Defendants deny using excessive force against plaintiff, and contend that the only force used against plaintiff was the minimum necessary to maintain control over him. Defendants deny that they were deliberately indifferent to plaintiff's safety by allowing an inmate to attack him. Finally, defendants contend that plaintiff received adequate medical treatment.

In support of the motions, defendants submitted the affidavit of Major Daren Cassidy (Exhibit 1), and records from the Jefferson County Sheriff's Department concerning plaintiff (Exhibit 2).

In his affidavit, defendant Cassidy states that, at the time of the alleged inmate assault, plaintiff was alone in his cell. Although he could have alerted correctional officers making rounds, plaintiff did not report the alleged assault until later, and he did not complain about an injury. Plaintiff told defendant Ortego to look under the fence line of the dayroom, where defendant Ortego recovered a sharpened piece of fence wire. On April 30, 2007, plaintiff reported the assault to the nurse making medication rounds. The nurse said that she would report the complaint. She examined plaintiff's hand, but did not schedule any additional treatment.

Defendant Cassidy states that plaintiff was not restrained to the hospital board as punishment or retaliation on May 1, 2007. Defendant Cassidy states that plaintiff was strapped to the board because he had a history of possessing weapons and prohibited items, and he had pending charges for having a shank in his cell. Also, plaintiff had been threatening suicide, and pieces of broken glass and a razorblade had been found in his cell and on him. Defendant Cassidy states that plaintiff was restrained so that he could not access weapons or attempt suicide, since correctional officers were not sure that they had found all of plaintiff's weapons. Defendant Cassidy states that plaintiff was routinely checked by the medical staff while he was restrained.

## Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

4

is entitled to a judgment as a matter of law." FED. R. CIV. PRO. 56(c). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Instone Travel Tech Marine & Offshore v. International Shipping Partners*, 334 F.3d 423, 427 (5th Cir. 2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Instone Travel Tech*, 334 F.3d at 427.

The party seeking summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003).

Because summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991); *Jackson v. Procunier,* 789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989) (*quoting Murrell v. Bennett,* 615 F.2d 306, 311 (5th Cir. 1980)).

Analysis

*Failure to Protect*

Prison officials have a constitutional duty to protect prisoners from violence inflicted by other prisoners. *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). An Eighth Amendment[2] claim consists of two components--one objective and one subjective. *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). To satisfy the objective requirement, the plaintiff must prove that he was exposed to a substantial risk of serious harm. *Id.* at 834; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). The plaintiff must also demonstrate that the defendants were deliberately indifferent to that risk. *See Farmer*, 511 U.S. at 834; *Lawson*, 286 F.3d at 262. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the defendants were aware of an excessive risk to plaintiff's health or safety, and yet consciously disregarded the risk. *Farmer*, 511 U.S. at 840-41; *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002). Under exceptional circumstances, a defendant's knowledge of a substantial risk of harm may be inferred by the obviousness of the risk. *Farmer*, 511 U.S. at 842; *Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).

Plaintiff has not shown that the defendants were deliberately indifferent to his safety by failing to protect him from an assault by Michael Chambers. Plaintiff contends the picket officers' view of the housing area was somewhat obstructed, but there is no indication that any of the named defendants were aware that the obstructed view posed a particular danger to plaintiff. Plaintiff

---

[2] The parties did not clarify whether plaintiff was a pretrial detainee or a convicted prisoner at the time of the incidents. The website maintained by the Texas Department of Criminal Justice shows that plaintiff was convicted of theft offenses on October 25, 2006 and April 25, 2007. Because plaintiff was a convicted prisoner at the time of the incidents, his claims are properly analyzed as Eighth Amendment claims.

6

alleges he reported to defendants Deshotel and Amy Noble that he was having problems with Michael Chambers, but he that vague report was not sufficient to put them on notice that plaintiff's life was in danger. Further, at the time of the assault, plaintiff was locked in his cell. Plaintiff has not alleged any facts suggesting that the defendants knew he would be attacked with a broom handle through the food slot on his cell door.

There is no competent summary judgment evidence demonstrating that the defendants were deliberately indifferent to plaintiff's safety. Accordingly, the defendants are entitled to summary judgment on this claim.

*Deliberate Indifference to Serious Medical Needs*

Although the Eighth Amendment does not explicitly mandate a certain level of medical care for prisoners, the cruel and unusual punishment clause has been interpreted to impose a duty on prison officials to provide inmates with adequate food, clothing, shelter, and medical care. *Farmer*, 511 U.S. at 832; *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999). A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001). Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). Mere negligence, neglect, or medical malpractice does not rise to the level of a constitutional violation. *Domino*, 239 F.3d at 756 ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."); *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999)

("[A]llegations of malpractice or negligence will never state a claim under the Eighth Amendment."); *Stewart*, 174 F.3d at 534. Nor does an inmate's disagreement with his medical treatment amount to an Eighth Amendment violation. *Stewart*, 174 F.3d at 537; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). "Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) ).

In this case, the defendants' conduct does not rise to the level of egregious intentional conduct required to satisfy the deliberate indifference standard. *See Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006). Plaintiff alleges he was denied medical treatment after he was attacked by Michael Chambers. A nurse examined his puncture wounds and bruise the next day and said she would report the incident, but determined that no treatment was necessary. Plaintiff has not demonstrated that he was harmed by the delay in medical care, or by the lack of further treatment.

Plaintiff has not shown that the defendants were deliberately indifferent to his serious medical needs. As a result, the defendants are entitled to summary judgment.

*Excessive Force*

Plaintiff alleges defendants Miller, Turner, Mills, Seals and Rodney Noble used excessive force against him by restraining him to a board. "Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (*quoting Whitley v. Albers*, 475 U.S. 312, 321 (1986) ). Several factors are relevant

in determining whether the force used was excessive: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).

Not every malevolent touch by a prison guard gives rise to a federal cause of action. *Hudson*, 503 U.S. at 9. The Eighth Amendment prohibition against cruel and unusual punishment "necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9, *quoting Whitley*, 475 U.S. at 327; *see Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) (spraying inmate with a fire extinguisher after the fire was out was a de minimis use of physical force and was not repugnant to the conscience of mankind where the inmate suffered no physical injury).

The jail records show that defendant Leday saw plaintiff tampering with the mirror in his cell on May 1, 2007. Officer Leday escorted plaintiff to the dormitory foyer to strip search him, and he saw plaintiff drop a piece of mirror into the trash can. Defendant Deshotel searched plaintiff's cell and found a shank made from fence wire. After plaintiff was secured in another cell, defendant Seals saw plaintiff remove a razor from his mouth. Plaintiff stated that he would do something crazy. Defendant Seals had ranking officers called. When plaintiff refused to respond to the ranking officers, they determined that plaintiff should be placed on suicide watch. Plaintiff was restrained to the back board to prevent him from accessing weapons or committing suicide, because the correctional officers could not locate the razor blade that plaintiff removed from his mouth. The only forced used against him was the force necessary to secure the restraints. The force was not repugnant to the conscience of mankind. Thus, the defendants are entitled to summary judgment.

9

*Conditions of Confinement*

"The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ). In addition to taking reasonable measures to ensure the safety of inmates, prison officials must provide inmates with adequate food, clothing, shelter, and medical care. *Id*. When considering a claim regarding prison conditions, the court must consider whether society considers the risk of harm to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. *Hudson*, 503 U.S. at 8. The deprivation must be so serious as to "deprive prisoners of the minimal civilized measures of life's necessities," as when it denies the prisoner some basic human need. *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

As previously discussed, a prison official cannot be found liable under the Eighth Amendment unless the official knows of, and disregards, an excessive risk to an inmate's health or safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw that inference. *Farmer,* 511 U.S. at 840-41.

The competent summary judgment evidence submitted by the defendants shows that plaintiff was restrained to the board for his own safety, and that of others, because of his threats of suicide and because prison officials were unable to locate the razorblade plaintiff removed from his mouth. The evidence shows that correctional officers checked on plaintiff on a regular basis while he was restrained to the board, at intervals of approximately thirty minutes. Although troubling, plaintiff

has not offered any competent summary judgment evidence to support his allegation that he was left to urinate on himself.[3]

*Retaliation*

"An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995), *cert. denied, Palermo v. Woods*, 516 U.S. 1084 (1996). Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *Perry v. Sinderman*, 408 U.S. 593, 597 (1972). However, retaliation is actionable only if the retaliatory act "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008).

To establish a retaliation claim, an inmate must establish: (1) he was exercising a specific constitutional right, (2) the defendant intended to retaliate against the inmate for exercising that right, (3) a retaliatory adverse act, and (4) causation. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir.), *cert. denied*, 549 U.S. 1038 (2006). Conclusory allegations are insufficient to establish a retaliation claim. *Woods*, 60 F.3d at 1166. The inmate must either produce direct evidence of motivation or allege a chronology of events from which retaliation may be plausibly inferred. *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004).

---

[3] Plaintiff's factual allegations were not made under penalty of perjury. Evidence supporting or opposing a motion for summary judgment must be declared to be true and correct under penalty of perjury and must be in admissible form. *Nissho-Twai American Corp. v. Kline*, 845 F.2d 1300 (5th Cir. 1988). Consideration of unsworn documents is not appropriate in ruling on a motion for summary judgment. *Martin v. John W. Stone Oil Distrib, Inc.*, 819 F.2d 547 (5th Cir. 1987).

Plaintiff contends that he was retaliated against for assisting other inmates with their legal work. This claim fails because plaintiff has not demonstrated that he was engaging in constitutionally-protected conduct. Prisoners do not have a right to a particular prisoner's help with legal matters, as long as their constitutional right of access to court is not infringed. *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996). Plaintiff has not demonstrated that the recipients of his legal assistance were denied access to courts. Thus, the defendants are entitled to summary judgment.

Conclusion

The competent summary judgment evidence shows that defendants did not violate plaintiff's constitutional rights. Therefore, it is **ORDERED** that defendants' motions for summary judgment are **GRANTED**. A final judgment will be entered in accordance with this Memorandum Opinion.

**SIGNED** this the **13** day of **September, 2010.**

_____
Thad Heartfield
United States District Judge